(C. D. 2041)

KURT ORBAN Co., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 19, 1958)

*Eugene R. Pickrell* (*Richard F. Weeks* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Lawrence, Judge: This protest relates to that part of the importation covered by entry 903031, described in consular invoice 9201 as "One Lindemann Metal Scrap Baler Code 'Sevol' complete in cases No. 1/7 and 19 parts unpacked," which was classified by the collector of customs as "Machine tool parts," and duty was imposed thereon at the rate of 15 per centum ad valorem as provided in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

Plaintiff claims that said merchandise should be classified as a machine, not specially provided for, and parts thereof, and subjected to duty at the rate of 13¾ per centum ad valorem pursuant to said paragraph 372, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739.

The pertinent provisions of the statutes to which reference has been made are here set forth:

Paragraph 372, as modified by the General Agreement on Tariffs and Trade, *supra*:

Machine tools (except jig-boring machine tools) _____ 15% ad val.

  *   *   *   *   *   *   *

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part:

  *   *   *   *   *   *   *

 Other _____ The same rate of duty as the articles of which they are parts

Paragraph 372, as modified by the Torquay protocol, *supra*:

Machines, finished or unfinished, not specially provided for:
 Calculating machines specially constructed for multi-
  plying and dividing_____ * * *

 *  *  *  *  *  *  *
 Other * * * _____ 13¾% ad val.
Parts, not specially provided for, wholly or in chief value of metal or porcelain,
 of any article provided for in any item 372 in this Part:
  Parts of sewing machines_____ * * *
  Other_____ The rate for the
                    article of which
                    they are parts

As a proviso to paragraph 372 of the basic tariff act, the following appears:

* * * *Provided further*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

The only witness in the case, Horst Orbanowski, a vice president in charge of the industrial equipment division of the importing corporation, was called by the plaintiff. This witness is a graduate of the Massachusetts Institute of Technology from which he received a degree in civil engineering and had had 30 years' experience "in engineering of all types."

He stated that the Kurt Orban Co., Inc., plaintiff herein, was engaged in the sale of industrial equipment and the importation of such equipment from Europe to the United States, and that he was familiar with the Lindemann metal scrap baler and its operation.

He identified a circular issued by the Lindemann machine factory and circulated throughout all English-speaking countries, which was received in evidence as exhibit 1. It contains pictorial illustrations of the working method of the Lindemann baler, which is composed mostly of cast iron and cast steel, in various stages of its operation. Orbanowski described the operation of the baler as follows:

Well, the scrap which is either steel scrap or non-ferrous scrap is dumped into the assembly chamber, the half-pressure ram is retracted, the scrap falls all the way down into the present assembly chamber and the half-pressure ram pushes it into the compression chamber.

During this operation, the excess scrap which sticks out above the bottom of the assembly chamber is sheared over and remains on the cover of the assembly chamber, the compression chamber is now closed. When [Then] a second hydraulic ram compresses the bale to a density of approximately 25 per cent of the metal density and after this compression has been completed, this bale which is so to say a bundle, is extracted through an opening in the compression chamber on to a conveyor belt and transported to where it has to go.

As a matter of fact, the record discloses that the shearing operation is a mere detail which may or may not have to be performed dependent

upon whether care is exercised in regulating the amount of scrap which is put into the compression chamber prior to the pressing operation. However, the blades are permanently attached to the machine in order to shear off any protruding pieces of scrap in the pressing operation.

When asked if the device had movable parts, the witness replied that it had "two moveable rams, the so-called half-pressure rams and the pressure ram which compresses the scrap to a bundle and pushes it out," and that the motivating force was hydraulic pressure from a hydraulic pump. Those movable parts return to their original position, being retracted by hydraulic pressure.

From the foregoing description of the character and operation of the device, we entertain no doubt that it is in fact a machine, as that term has been judicially defined. *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537; *United States* v. *Guth Stern & Co., Inc.*, 21 C. C. P. A. (Customs) 246, T. D. 46777; and *United States* v. *J. E. Bernard & Co., Inc.*, 30 C. C. P. A. (Customs) 213, C. A. D. 235.

The only question remaining for our consideration is whether or not the Lindemann scrap metal baler is in fact a machine tool and, hence, more specifically provided for as such than as a machine.

In support of the collector's classification, defendant relies upon the following cases, wherein certain items were held to be dutiable as machine tools:

*F. W. Meyers & Co., Inc.* v. *United States*, 60 Treas. Dec. 1293, Abstract 17438—blocks which constituted the operating part of a machine known as a drop hammer;

*Henry Pels & Co.* v. *United States*, 65 Treas. Dec. 1294, Abstract 26990—a machine for cutting steel billets;

*United Machine Tool Corp.* v. *United States*, 64 Treas. Dec. 98, T. D. 46457—blades which sever metal and fit into and form integral parts of machines known as plate shearers;

*Alka Bottle Capping Machine Co.* v. *United States*, 73 Treas. Dec. 1210, Abstract 38149—an automatic machine whose function is to cut a metal disk from a sheet of aluminum which is inserted in the machine in roll form and then to shape and fit said metal disk over the top of a milk bottle;

*Alex Benecke* v. *United States*, 6 Cust. Ct. 432, C. D. 509, affirmed in 30 C. C. P. A. (Customs) 55, C. A. D. 214—steel rolls, parts of a rolling mill which through its exerted pressure when in operation reduced the size of the steel it worked on without the employment of lathes or other shaping machine parts.

It is our considered opinion that the character and functions of the devices referred to in the above-cited decisions are so different from

the structure, operation, and purpose of the Lindemann baler as to be clearly distinguishable.

In the cases cited, it appears that the primary function of the devices was to perform an operation upon metal in order to improve and advance its status for further use. In the instant case, however, the primary function of the Lindemann baler is merely that of compressing scrap metal into such form that it becomes more readily available for handling and transportation. Its mechanical and physical properties have not been altered. As stated by the witness Orbanowski, "The main job of the baler is to take voluminous scrap and compress it into smaller bundles." Moreover, the metal which is sheared off in the baling operation is not thrown away but is used in the next baling operation.

Plaintiff cites a number of decisions in which various devices were held to be dutiable as machine tools and points out that, in such cases, the articles held to be machine tools performed "a task of fabrication or manufacture or production of an article," whereas the Lindemann baler does not manufacture or produce a new article—it merely compresses scrap from a loose form to a compact form.

Plaintiff also invites our attention to the case of *Keith Dunham Co.* v. *United States*, 26 C. C. P. A. (Customs) 250, C. A. D. 24, wherein the court held that a power-driven machine which employed a flame-spraying blow torch to cut a sheet of steel along a line was not a machine tool.

Although the issue in that case was whether a so-called "secator" should be classified as an article "having as an essential feature an electrical element or device" in paragraph 353 of the Tariff Act of 1930 or as "machine tools" in paragraph 372 of said act, nevertheless, the reasoning of the court in that case has its controlling influence here. To quote from that opinion:

> The "secator" might well be a machine tool in the common acceptation of that term. It is a machine and both litigants agree that it is a tool. Therefore, it is a machine tool as that term is ordinarily used. But Congress has specifically defined a machine tool in paragraph 372, *supra*. As we have previously pointed out, the "secator" is not a machine tool within the definition set out by the Congress. * * *

The congressional definition of a machine tool contained in the second proviso to paragraph 372 is any machine operating other than by hand power which employs a tool for work on metal.

The court, in the *Keith Dunham* case, quoted with apparent approval the Summary of Tariff Information, 1920, pages 264, 265, in which it was pointed out that—

> * * * The term *machine tools* has no definite or fixed meaning. There is one class of power-driven machines designed to produce only one article in great

numbers with a considerable degree of automatic action, as screw-making machines, bolt threaders, nut tappers, gear cutters, and spring-making machines. They usually turn out a completed product or one requiring little subsequent finishing. These are styled *special machines*.

The other class, properly called machine tools, consists of power-driven forming or shaping machines which are not special, but are adaptable for all kinds of work within their classes on all shapes of metal stock or raw material. * * * [Italics quoted.]

Obviously, the court, in the *Keith Dunham* case, *supra*, was of the opinion that the "secator" did not perform work on metal in the proper sense of that term as defined by the statute.

If, therefore, a "secator" is not a machine tool within the statutory definition of that term, *a fortiori* a Lindemann baler is not a machine tool in the tariff sense. It is, however, a machine and dutiable at the rate of 13¾ per centum ad valorem pursuant to paragraph 372, as modified by the Torquay protocol, *supra*, as claimed by plaintiff.

For the foregoing reasons, the protest is sustained insofar as it relates to the merchandise described on consular invoice 9201 accompanying entry 903031 covered by the protest herein. As to all other merchandise and all other claims, the protest is overruled.

Judgment will issue directing the collector to reliquidate the entry accordingly.